In re the Marriage of Patricia L. DUFFEY, Petitioner, Appellant,

v.

John W. DUFFEY, Respondent.

No. CX–88–1187.

Court of Appeals of Minnesota.

Dec. 6, 1988.

Jack S. Jaycox, Paul M. Gabbert, Jack S. Jaycox Law Offices, Bloomington, for petitioner-appellant.

Stephen C. Davis, Brian L. Sobol, Katz, Davis, Manka & Haugen, Minneapolis, for respondent.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This appeal arises out of a dissolution proceeding commenced in August 1983. The trial court awarded appellant temporary spousal maintenance in the amount of $5,000 per month, which was appealed. In *Duffey v. Duffey*, 416 N.W.2d 830 (Minn. Ct.App.1987) (*Duffey I*), this court remanded for a determination of permanent spousal maintenance. After reconsidering the appropriate statutory factors, the trial court awarded appellant permanent spousal maintenance of $5,000 per month, which appellant now challenges. We affirm.

## FACTS

Appellant Patricia Duffey, 43, and respondent John Duffey, 45, were married on August 9, 1966. They have two children, Timothy, 18 and John, 20.

Prior to the parties' marriage, appellant worked for one year as a secretary. She did not work outside the home during the marriage and is currently unemployed. Appellant's educational background includes one year at the University of Minnesota and some classes at the Minnesota School of Business. She plans on completing her education and obtaining employment to enrich her life. However, appellant does not feel an obligation to support herself. Her current income consists primarily of her $60,000 per year spousal maintenance, although she also owns stock that pays her dividends of approximately $12,000 per year. Appellant's purported monthly expenses are $12,551.

Respondent has worked full time for the C.J. Duffey Paper Co., a family-owned business, for the past 20 years. His duties at Duffey Paper relate mainly to warehousing and maintenance. Respondent is not involved in making management decisions and plays no role in the operation of the company. Respondent is a 26 percent shareholder of C.J. Duffey Paper Co. and also owns a minority interest in six other closely held corporations and one partnership. Respondent's gross income was

$658,347 in 1983, $542,590 in 1984, and $664,731 in 1985.

Despite respondent's income, the parties maintained a relatively modest standard of living during their marriage. The parties vacationed but once or twice yearly and entertained guests infrequently. The parties were also members of a local country club.

In its original dissolution order, the trial court determined that respondent's interest in his various business entities was nonmarital property and any increase in value in respondent's interest in the various entities remained his nonmarital property. The trial court found the value of the parties' marital estate was $1,431,489, and in view of respondent's considerable nonmarital estate, it awarded appellant $858,893, or 60%. Of this award, appellant was awarded $682,247 in cash, to be paid to her, with the first $281,000 paid by April 23, 1987, and the balance payable in annual installments of $100,000 together with interest through March 1, 1991. As a result of the trial court's characterization and distribution of the parties' marital and nonmarital assets, the value of assets awarded to respondent exceeds $5 million, while the value of assets awarded to appellant approximates $1.1 million. The trial court also awarded appellant temporary spousal maintenance in the amount of $5,000 per month for four years.

On appeal appellant contested, *inter alia*, the trial court's determination as to the amount and duration of spousal maintenance. In *Duffey I*, this court reversed and remanded the trial court's temporary spousal maintenance award for a determination of an appropriate amount of permanent spousal maintenance. *Duffey*, 416 N.W.2d at 833.

Prior to the remand hearing, appellant sought additional discovery from respondent regarding respondent's current financial situation. In its order of May 5, 1988, the trial court stated that "no further discovery pertaining to respondent's income is necessary." The trial court also found:

> The Court already considered the parties' individual earning capacities and financial resources, living expenses, and their standard of living during the marriage when it made its Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree entered January 20, 1987. After reconsideration of those factors in light of the Court of Appeals decision in *Duffey v. Duffey*, 416 N.W.2d 830 (Minn.Ct.App.1987), the Court finds that the $5,000 per month originally awarded to Petitioner is an appropriate amount of permanent spousal maintenance, and that Respondent has the ability to pay said amount.

Appellant appeals from the trial court's order of May 5, 1988, and by notice of review, respondent also seeks review of that order.

## ISSUES

1. Did the trial court abuse its discretion in awarding permanent spousal maintenance of $5,000 per month?

2. Did the trial court abuse its discretion in refusing to provide for life insurance as security for respondent's spousal maintenance obligation?

3. Did the trial court abuse its discretion in failing to award appellant attorney fees and costs necessitated by the remand hearing, and is appellant entitled to such fees and costs generated by this appeal?

## ANALYSIS

### I.

Appellant contends that the trial court abused its discretion in awarding her permanent spousal maintenance of $5,000 per month, and that the trial court's findings are insufficient to support its award. Appellant also claims that the trial court erred by not reopening the case on remand to hear new evidence of respondent's current financial situation before determining the amount of permanent maintenance to which appellant is entitled.

Our inquiry as to the propriety of the trial court's permanent maintenance award must necessarily begin with an examination of the trial court's responsibility on

remand. In *Duffey I*, this court affirmed the trial court's determination that the increase in value of respondent's nonmarital business interests was nonmarital property. *Duffey*, 416 N.W.2d at 833. This court also decided that the trial court's award of spousal maintenance should have been permanent. *Id.* In so deciding, we stated:

> We reverse and remand for a determination of an appropriate amount of permanent spousal maintenance.

*Id.* No other directive was given to the trial court with regard to how it should proceed in determining permanent maintenance.

A trial court's duty on remand is to execute the mandate of the remanding court strictly according to its terms. *Halverson v. Village of Deerwood*, 322 N.W.2d 761, 766 (Minn.1982). When the trial court receives no specific directions as to how it should proceed in fulfilling the remanding court's order, the trial court has discretion in handling the course of the cause to proceed in any manner not inconsistent with the remand order. *John Wright & Associates, Inc. v. City of Red Wing*, 256 Minn. 101, 102, 97 N.W.2d 432, 434 (1959).

Because this court's general remand in *Duffey I* was without specific direction as to how the trial court was to proceed in determining permanent maintenance, the trial court had broad discretion to make that determination as it saw fit. The trial court did not abuse its discretion in denying appellant's discovery request prior to making its determination regarding permanent spousal support. If the parties' financial circumstances have in fact changed during the pendency of this appeal, appellant's proper recourse is to seek modification of her maintenance award pursuant to Minn. Stat. § 518.64 (1986). *See Lunde v. Lunde*, 408 N.W.2d 888, 893 (Minn.Ct.App. 1987).

*Duffey I* is also relevant to appellant's claim concerning the sufficiency of the trial court's findings related to spousal maintenance. In *Duffey I*, this court expressed no concern that the trial court's findings were inadequate in any regard. This court determined only that the trial court erred in failing to make appellant's maintenance award permanent. We did not question the sufficiency of the trial court's findings. In addition, our review of the record on this appeal reveals that the trial court did make express findings on several of the factors listed in Minn.Stat. § 518.552, subd. 2 (1986). The court found that appellant was 41 years old and in good health, *Id.*, subd. 2(f); that the parties were married in 1966 and that appellant did not hold full-time employment while married, *Id.*, subd. 2(d); that appellant was capable of contributing to her own support, due to her aptitude and interest in real estate sales, *Id.*, subd. 2(b); and that the Duffeys' standard of living during their marriage was rather modest, citing several examples of the parties' frugality as evidence upon which this finding was based, *Id.*, subd. 2(c). Further, the trial court considered appellant's financial resources, including both marital and nonmarital property awarded to her. *Id.*, 2(a).

The trial court's remand order of May 5, 1988, also states that it considered the parties' earning capacities, financial resources, and living expenses in determining spousal maintenance in its original order and that it reconsidered these factors before awarding appellant permanent spousal maintenance.

The fact that the trial court failed to make express findings on such factors as respondent's income and respondent's ability to pay does not require another remand. The voluminous record that this lengthy trial produced contains ample evidence relating to respondent's financial affairs. In fact, a good percentage of the trial was devoted to the parties' financial situation and the standard of living they enjoyed during their marriage.

The standard of review of a trial court's maintenance award is whether the trial court abused the wide discretion accorded it. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). There must be a clearly erroneous conclusion that is against logic and the facts on record before an appellate court will find that the trial court abused its discretion. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). That discretion is examined in light of the con-

trolling statutory guidelines of Minn.Stat. § 518.552. *Erlandson*, 318 N.W.2d at 38. Each case must be decided on its own facts, and no single factor is dispositive. *Id.*

There is no question that respondent is a man of considerable wealth. However, respondent's income and ability to pay are only two of several factors to be considered in determining spousal maintenance.

The trial court found that:

Extensive testimony was received relative to the standard of living established by the parties during their marriage. The parties had a comfortable, upper-middle-class standard of living. Theirs was not a lavish, extravagant lifestyle. Respondent was, in fact, relatively frugal. For example, Respondent chose to drive a 1979 Blazer as his personal vehicle. [Appellant's] vehicle is a 1980 model. The parties typically took one vacation per year, travelling to Respondent's parent's home in Palm Springs. They would occasionally take an additional ski trip to the Western states. There was no world-wide travel such as [appellant] has enjoyed since the parties' separation.

It was only after the parties separated that appellant's spending and travel greatly increased. At the time the parties separated, temporary spousal maintenance in the amount of $5,500 per month was stipulated to by the parties.

Although appellant does have certain expenses now that she did not have while married, such as townhouse and car payments, she also has a property award of approximately $1.1 million which is predominantly cash and capable of producing income.

Finally, appellant is presently 45 years old and in good health. As found by the trial court, employment evaluations submitted by appellant herself indicated strong aptitude and interest in sales, particularly real estate sales. She plans on returning to school to complete her education. Thus, it would appear likely that despite her eligibility for permanent maintenance, she very probably will be supplementing her current finances with additional sums from her own employment.

In contrast to appellant's arguments, respondent urges that appellant's maintenance should be reduced downward once appellant has received all of her property award. We cannot agree. The trial court was within its discretion awarding both permanent maintenance and a property award of 60% of the marital estate.

Viewing the record and the history of this case in its totality, we cannot say that the trial court failed to adequately express the basis on which its spousal maintenance award rested, nor that it abused its discretion in awarding appellant permanent maintenance in the amount of $5,000 per month. Neither did the court err in refusing to grant respondent's request that appellant's maintenance be reduced once she has received her entire property award. To grant such a request would very possibly force appellant to invade the corpus of her property award to meet her monthly living expenses. Such required invasion would be inappropriate. *See Sward v. Sward*, 410 N.W.2d 442, 444 (Minn.Ct.App.1987).

## II.

Appellant next contends that the trial court abused its discretion in failing to secure her award of permanent spousal maintenance with life insurance protection. In *O'Brien v. O'Brien*, 343 N.W.2d 850 (Minn.1984), the supreme court recognized that "[i]n the exceptional case, the reasons which justify granting permanent alimony * * * also justify the securing of that alimony." *Id.* at 853 (quoting *Arundel v. Arundel*, 281 N.W.2d 663, 667 (Minn. 1979)). The circumstances in *O'Brien* were unique. Mrs. O'Brien had been awarded custody of a teenage daughter who was afflicted with cerebral palsy. That disease prevented the daughter from ever being able to live alone and also limited her employment prospects. The court recognized that Mrs. O'Brien's employment prospects were poor and unlikely to improve, given her age (49), education (high school), vocational experience, and the time and care

that her daughter required. *Id.* at 853. Furthermore, Mrs. O'Brien's total assets from the marriage amounted to only $343,581. The *O'Brien* court concluded that "we think this is one of those exceptional instances where there should be some life insurance on the husband's life to afford the wife a measure of security for loss of maintenance in the event her husband should predecease her." *Id.* at 853.

The case at hand is distinguishable from *O'Brien.* This is not the exceptional case which justifies securing appellant's maintenance award with life insurance. The trial court did not abuse its broad discretion in failing to so secure the award.

### III.

Finally, appellant contends that the trial court abused its discretion in denying her request for attorney fees at the remand hearing. Appellant has also moved this court to award her attorney fees and costs necessitated by this appeal.

■ A trial court may award attorney fees to a party in a dissolution proceeding to enable them to carry on or contest the proceeding. *See* Minn.Stat. § 518.14 (1986). Allowance of attorney fees in such a case rests almost entirely within the discretion of the trial court. *Solon v. Solon,* 255 N.W.2d 395, 397 (Minn.1977). Only rarely will a trial court's decision regarding attorney fees be overturned on appeal. *Rosenberg v. Rosenberg,* 379 N.W.2d 580, 587 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Feb. 19, 1986).

■ In the original dissolution proceeding, the trial court ordered respondent to pay approximately one-third of appellant's attorney fees, which totaled $175,000.

Appellant will receive $300,000 of her $1 million award in cash over the next three years, in addition to her monthly maintenance award. Given appellant's financial situation, we cannot say that the trial court abused its discretion in failing to award her attorney fees at the remand hearing. Appellant's request for attorney fees and costs on appeal is also denied.

### DECISION

1. The trial court did not abuse its discretion in awarding permanent spousal support of $5,000 per month.

2. The trial court did not abuse its discretion in failing to secure appellant's permanent maintenance award with life insurance protection.

3. The trial court did not abuse its discretion in failing to award attorney fees, and appellant's request for costs and fees necessitated by this appeal is denied.

AFFIRMED.