In the Matter of the WELFARE
OF R.T.B., Child.

No. C0–92–828.

Court of Appeals of Minnesota.

Nov. 10, 1992.

Matthew S. Vickery, Mueller, Lowther &
Vickery, Sleepy Eye, for appellant father.

John R. Rodenberg, Berens, Rodenberg & O'Connor, New Ulm, for respondent mother.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

R.T.B.'s father appeals from an order terminating his parental rights pursuant to Minn.Stat. § 260.221, subds. 1(b)(1), (2), (4), 4 (1990). We affirm.

## FACTS

Appellant and respondent mother met in 1981 and began living together in 1983. The parties had one child, R.T.B., who was born on March 1, 1985. The parties lived together for approximately five years but never married.

When appellant found out that respondent was pregnant, he told her that she should have an abortion or else put the baby up for adoption. He also said that he hoped both she and the baby would die. Several times during the pregnancy, appellant physically assaulted respondent. Appellant refused to participate in childbirth classes and was not present when R.T.B. was born.

From the time that R.T.B. came home from the hospital, respondent was his primary caretaker. Sporadically, appellant assisted with R.T.B.'s care. Appellant was involved in dealing drugs and was frequently away from home. On the days that he was home, respondent would take R.T.B. and leave the house for fear that appellant would abuse them.

Appellant also used drugs. He used marijuana on a daily basis, sometimes in R.T.B.'s presence. He used cocaine and would isolate himself from his family for several days at a time. Appellant's increased use of drugs and alcohol in 1987 and 1988 resulted in a failure to interact with R.T.B.

In early 1988, appellant began threatening respondent on an almost daily basis. He told her that he was going to shoot both her and R.T.B. and then turn the gun on himself. On one occasion, appellant came into the kitchen, pointed a rifle at respondent and R.T.B. and told them, "I could just shoot us all right now." During this same time period, appellant also threatened to kidnap R.T.B.

On August 16, 1988, appellant came home drunk at 2 a.m. and pulled respondent out of bed. He then threatened her and R.T.B. with a loaded handgun, telling them, "Today's the day." When respondent attempted to call her mother for help, appellant hung up the phone. He told her that he was going to shoot everyone. Eventually respondent escaped with R.T.B., who was three and one-half years old at the time. Shortly thereafter, respondent ended the relationship with appellant.

Since August 1988, appellant has seen R.T.B. three times. The last time was in October 1988. Appellant has never asked respondent to voluntarily allow him visitation, nor has he brought any legal action seeking court-ordered visitation.

In September 1989, appellant was arrested by the federal authorities. In December 1990, he pleaded guilty to charges of cocaine trafficking, money laundering and income tax evasion. He was subsequently sentenced to serve 138 months in a federal correctional institution.

In June 1989, respondent married K.B., a railroad engineer who does not consume alcohol or drugs. The couple has since had a daughter. K.B. has developed a father-son relationship with R.T.B. and wishes to adopt him. Appellant has not consented to the adoption.

In April 1991, respondent filed a petition to terminate appellant's parental rights. At the hearing, the trial court heard testimony from the parents, relatives of both parties, R.T.B.'s guardian ad litem, and two psychologists who evaluated appellant. The trial court issued findings and granted the petition.

The court based its decision on the existence of three statutory conditions: (1) abandonment, Minn.Stat. § 260.221, subd. 1(b)(1); (2) refusal or neglect to comply

with duties imposed by parent-child relationship, Minn.Stat. § 260.221, subd. 1(b)(2); and (3) palpable unfitness, Minn.Stat. § 260.221, subd. 1(b)(4). Additionally, the court found that termination would also be in R.T.B.'s best interest. *See* Minn.Stat. § 260.221, subd. 4. Appellant subsequently brought this appeal, arguing that the trial court's findings were not supported by clear and convincing evidence.

## ISSUE

Is the trial court's termination of appellant's parental rights supported by clear and convincing evidence?

## ANALYSIS

Parental rights may be terminated pursuant to Minn.Stat. § 260.221 (1990). "As a matter of law, termination of parental rights is not a preferred action." *In re Welfare of M.G.*, 407 N.W.2d 118, 120 (Minn.App.1987). Accordingly, in a proceeding to terminate parental rights, the petitioner bears the burden of proving by "clear and convincing evidence that one or more of the statutory termination grounds exists." *In re Welfare of C.K.*, 426 N.W.2d 842, 847 (Minn.1988), *quoted in In re Welfare of J.S.*, 470 N.W.2d 697, 701 (Minn.App.1991), *pet. for rev. denied* (Minn. July 24, 1991).

■ The trial court's findings will not be overturned in a termination action unless clearly erroneous. *In re Welfare of P.J.K.*, 369 N.W.2d 286, 290 (Minn.1985). Due to the gravity of the proceedings, however, a reviewing court must exercise great caution. *See In re Welfare of J.H.D.*, 416 N.W.2d 194, 197 (Minn.App.1987), *pet. for rev. denied* (Minn. Feb. 12, 1988). This court must "closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing." *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980), *quoted in In re Welfare of H.K.*, 455 N.W.2d 529, 532 (Minn.App. 1990), *pet. for rev. denied* (Minn. July 6, 1990).

Although the trial court based its decision on three of the statutory conditions listed in Minn.Stat. § 260.221, subd. 1(b), a finding of only one may be sufficient for termination. *H.K.*, 455 N.W.2d at 532. The trial court's findings clearly support termination pursuant to Minn.Stat. § 260.-221, subd. 1(b)(4), palpable unfitness, and we affirm on that basis. Furthermore, we note in this case that the best interests of the child criteria is a significant factor favoring affirmance of the trial court's decision.

### 1. *Palpable Unfitness*

■ Minn.Stat. § 260.221, subd. 1(b)(4) provides that parental rights may be terminated if the court finds:

> That a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

The trial court found that appellant was palpably unfit to be a party to the parent-child relationship due to his alcohol and drug abuse, his incarceration and his failure to maintain any relationship with R.T.B. after August 1988. The trial court also found that these factors would continue for the foreseeable future. Specifically, the court found that at least some of appellant's behavior could be attributed to a character disorder with anti-social features. The court found that this condition was not amenable to treatment. The court also found that appellant's incarceration, which negatively affected any chance of developing an appropriate parent-child relationship with R.T.B., would continue until approximately the year 2000.

Appellant challenges the trial court's decision, contending that the findings were not supported by clear and convincing evidence. Appellant cites no examples of where a particular finding lacks evidentiary support. Rather, appellant argues that there was other evidence presented at trial

which should have resulted in different findings. Specifically, with regard to the trial court's findings regarding palpable unfitness, appellant contends that the trial court ignored the testimony of his witnesses who said that he was capable of being a fit parent.

We find appellant's argument unpersuasive. He fails to consider the role that credibility plays in trial court decisions of this type. The trial court has the responsibility to evaluate the credibility of the witnesses. *Roy Matson Truck Lines, Inc. v. Michelin Tire Co.*, 277 N.W.2d 361, 362 (Minn.1979). Based upon its evaluation, the trial court may "accept all or only part of any witness' testimony." *Id.* Because the trial court chose to give certain testimony more weight does not mean that the trial court's findings lack evidentiary support and require reversal. To the contrary, on appeal

> this court must defer to the trial court's assessment of credibility of witnesses and the weight to be given to their testimony.

*General v. General*, 409 N.W.2d 511, 513 (Minn.App.1987).

2. *Best Interests of the Child*

■ Minn.Stat. § 260.221, subd. 4, provides that:

> In any proceeding under this section, the best interests of the child must be the paramount consideration, provided that * * * at least one condition in subdivision 1, clause (b), [is] found by the court.

In analyzing the best interests of the child, the court must balance three factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child. *M.G.*, 407 N.W.2d at 121. Competing interests include such things as a stable environment, health considerations and the child's preferences. *Id.* During this balancing process, the interests of the parent and child are not necessarily given equal weight. *In re Welfare of Udstuen*, 349 N.W.2d 300, 304 (Minn.App.1984). Rather,

"both the interests of the parent and child are considered along with the circumstances of the particular case in an effort to determine which of these interests is to predominate. Balancing, therefore, is an active process of determining the weight of two potentially opposing interests rather than a static attribution of an equal weight to each interest."

*Id.* (quoting *In re Welfare of H.G.B.*, 306 N.W.2d 821, 826 (Minn.1981)). Although the best interests of the child cannot be the sole justification for the termination of parental rights, it is an important factor to be considered by the trial court.

■ In the present case, the trial court balanced the best interest factors and found that the scales tipped in favor of terminating appellant's parental rights. First, the trial court found that there was no parent-child relationship to preserve. The court also found that R.T.B. was presently part of a stable and loving two-parent family and that it would be in his best interest to provide "legal reality to [R.T.B.'s] situational reality" by terminating appellant's parental rights. Finally, the court made findings regarding the fact that since R.T.B. and his mother had left appellant, both R.T.B.'s emotional and physical health had improved. All of these findings were factually supported by evidence adduced at trial.

Appellant challenges the trial court's findings as not being supported by sufficient evidence. Again, we disagree. Each of the trial court's findings regarding R.T.B.'s best interests is supported by clear and convincing evidence in the record.

## DECISION

The trial court's decision to terminate appellant's parental rights is supported by clear and convincing evidence.

Affirmed.