*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1076**

In the Matter of the Welfare of the Children of:
K. M. C. and D. S. W., Parents

**Filed November 21, 2016
Affirmed
Ross, Judge**

Washington County District Court
File No. 82-JV-14-1074

Dorothy M. Gause, Dorothy M. Gause, LLC, Stillwater, Minnesota (for appellant)

Sarah Bashiri, Bashiri Law Office, St. Paul, Minnesota (for respondent K.M.C.)

Pete Orput, Washington County Attorney, Anthony J. Zdroik, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Jill Idrizow, Stillwater, Minnesota (guardian ad litem)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Muehlberg, Judge.[*]

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

The district court terminated D.S.W.'s parental rights to his two sons after he sexually assaulted their eight-year-old sister. On appeal, D.S.W. challenges the evidence supporting the termination and the district court's best-interests decision. Because the record establishes clear statutory bases for termination, and because the district court's best-interests analysis supports the termination, we affirm.

## FACTS

D.S.W. pleaded guilty to one count of first-degree criminal sexual conduct after he admitted that, between June and September 2014, he subjected J.C., an eight-year-old girl, to vaginal and oral sex. At the time he sexually abused J.C., he lived with her mother, K.M.C., and her three other children, E.W., S.W., and D.C., who were 3, 1 1/2, and 7 years old, respectively. Only the boys—E.W. and S.W.—are D.S.W.'s children biologically, but he was supervising all four children when he raped J.C. Washington County petitioned the district court to terminate D.S.W.'s parental rights on the statutory bases that a child suffered egregious harm in his care and that he had been convicted of a disqualifying crime.

The district court conducted a trial in May 2016 and heard testimony from a social worker, K.M.C., D.S.W., and D.S.W.'s mother. Among other things, the social worker testified that "egregious harm . . . occurred in [the] home," that the children had successfully adjusted to D.S.W.'s absence, that J.C.'s biological father "stepped into the father role," that termination was in the children's best interests, and that D.S.W.'s continued denial of the offense indicated that the children would be at risk if they were left

2

in his care.  K.M.C. testified that D.S.W. abused her, that his family threatened her life, that it was not in the children's best interests to maintain a relationship with D.S.W., and that she received a letter that included personal details about her from "Geraldo" at the St. Cloud prison where D.S.W. was incarcerated.  D.S.W. asked the court not to terminate his parental rights, claiming that he had a good relationship with the children, that he had been a good father to E.W. and S.W., that nothing had happened to *his* children, and that he would fight to see them regardless of the outcome of the trial. He was not allowed by the district court to testify about K.M.C.'s supposed insobriety. D.S.W.'s mother denied that D.S.W. committed any sexual abuse, disregarding D.S.W.'s express admission of guilt, his guilty plea, and his conviction.

As the district court began to announce its decision and the unfavorable outcome became apparent, D.S.W. assailed the judge with a barrage of insulting expletives, prompting his immediate ejection from the courtroom. The district court continued with its decision, concluding that it would terminate D.S.W.'s parental rights to E.W. and S.W.

The district court found, among other things, that D.S.W. had been convicted of first-degree criminal sexual conduct against J.C.; that he inflicted egregious harm on J.C. by his sex abuse; that he indirectly exposed E.W. and S.W. to egregious harm by committing the crime while supervising them; that his relationship with K.M.C. was punctuated with domestic violence; that he threatened in his testimony to pursue his children regardless of an unfavorable decision; and that the social worker and guardian ad

3

litem both supported termination. The district court gave multiple reasons why termination is in the children's best interests.

D.S.W. appeals.

## D E C I S I O N

D.S.W. challenges the district court's termination of his parental rights to E.W. and S.W. The district court has discretion to terminate parental rights. *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136 (Minn. 2014). We will defer to the district court's termination decision if even one statutory ground is proven by clear and convincing evidence and the termination is in the children's best interests. *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 661 (Minn. 2008). D.S.W. maintains that the district court erroneously admitted evidence of the jailhouse letter from "Geraldo" and that it erroneously determined that termination suited the children's best interests. Neither argument is compelling.

### *Statutory Basis for Termination*

D.S.W.'s evidentiary challenge could not lead to reversal regardless of its merit. It has no bearing whatsoever on one of the two statutory grounds for the termination, which is that D.S.W. was convicted of criminal sexual conduct. We review whether a statutory basis supports termination for an abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). The district court may terminate parental rights if it finds the existence of even one statutory basis. Minn. Stat. § 260C.301, subd. 1(b) (2014). One of the bases for termination here is the parent's conviction of "a crime listed in section 260.012, paragraph (g), clauses (1) to (5)."

4

*Id.*, subd. 1(b)(9). D.S.W.'s conviction meets this basis. *See* Minn. Stat. § 260.012(g)(5) (2014) (including offenses requiring predatory-offender registration); Minn. Stat. § 243.166, subd. 1b(a)(1)(iii) (2014) (requiring registration for individuals convicted of criminal sexual conduct).

The prison letter that D.S.W. maintains should not have been admitted into evidence has no bearing on whether he was convicted of a listed crime. His argument on appeal therefore does not call into doubt that ground for the termination decision. We need not and do not address the merits of D.S.W.'s complaint about the prison-letter evidence. Because D.S.W.'s evidentiary argument leaves unchallenged the district court's undisputed finding that D.S.W. was convicted of criminal sexual conduct, even assuming (without deciding) that the district court erred by admitting the challenged evidence, the error is, at worst, harmless.

### Best-Interests Determination

D.S.W. also challenges the district court's best-interests determination and argues that the district court erred by prohibiting testimony about K.M.C.'s insobriety. The district court must balance three factors when making its best-interests determination—the child's interest in preserving the parent-child relationship, the parent's interest in preserving the relationship, and any competing interest of the child. *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). We review a district court's best-interests determination for an abuse of discretion. *J.R.B.*, 805 N.W.2d at 905.

D.S.W. argues that the district court failed to reference the factors of the best-interests test and failed to specify how it weighed the factors. He offers no authority

requiring the district court to expressly refer to the balancing of factors or to remark on how the factors weigh against each other. We have clarified that "the district court . . . must consider a child's best interests and explain its rationale in its findings and conclusions." *In re Tanghe*, 672 N.W.2d 623, 626 (Minn. App. 2003). We are satisfied from the district court's findings and conclusions that it sufficiently considered the children's best interests.

The district court identified multiple circumstances supporting its conclusion that termination of D.S.W.'s parental rights is in the children's best interests. It observed that D.S.W. had inflicted egregious harm on J.C., E.W., and S.W. It reasoned that D.S.W. was abusive and lacked self-control. It emphasized his threatening remarks and his conviction as a pedophile. The district court also observed that D.S.W. will be in prison until 2024 and unable to build a meaningful parental relationship with E.W. and S.W. It reflected on D.S.W.'s denial that the sexual abuse ever occurred. While the district court focused on the children's interest in maintaining a relationship with D.S.W., it implicitly rejected D.S.W.'s competing interest in maintaining a relationship with the children and considered other competing interests. These considerations, together with the court's findings as to the children's emotional welfare and the likely harmful impact resulting from D.S.W.'s continued contact with them, demonstrate a proper focus on those factors that bear on the children's interest in maintaining a parent-child relationship with D.S.W. And K.M.C.'s alleged insobriety is not relevant to this analysis.

D.S.W.'s arguments do not impugn the district court's decision to terminate his parental rights.

**Affirmed.**

6